UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GAETAN PELLETIER,

Plaintiff,

v.

WILLIAM V. RODRIGUEZ, *et al.*,

Defendants.

Case No. 3:17-cv-00642-MMD-EJY

ORDER

## I.    SUMMARY

This is a breach of contract action relating to the sale of a cattle ranch in Elko, Nevada. Plaintiff Gaetan Pelletier brings claims for breach of contract, negligence, gross negligence, fraud, and civil conspiracy against Defendants William V. Rodriguez and Judy A. Rodriguez, as individuals and as trustees, and against the William V. Rodriguez Revocable Living Trust ("Rodriguez Trust"). (ECF No. 23.) Before the Court are Plaintiff's partial motion for summary judgment (ECF No. 167 ("Plaintiff's Summary Judgment Motion")) and Defendants' motion for summary judgment (ECF No. 172 ("Defendants' Summary Judgment Motion")).[1] Also before the Court are various motions to strike filed by both parties.[2]

As explained further below, the Court will grant in part and deny in part Defendants' motions to strike (ECF Nos. 176, 183), and will deny Plaintiff's motion to strike (ECF No.

---

[1]Defendants responded to Plaintiff's Summary Judgment Motion (ECF No. 173) and Plaintiff did not reply. Plaintiff responded to Defendants' Summary Judgment Motion (ECF No. 179) and Defendants replied (ECF No. 182). Plaintiff's response to Defendants' Summary Judgment Motion and Plaintiff's motion to strike are identical documents. (ECF Nos. 179, 180.) The Court will refer to ECF No. 179 as Plaintiff's response, and ECF No. 180 as Plaintiff's motion to strike.

[2]The motions to strike are as follows: (1) Defendants' motion to strike (ECF No. 176) exhibits attached to Plaintiff's Summary Judgment Motion; (2) Plaintiff's motion to strike (ECF No. 180) Defendants' Summary Judgment Motion; and (3) Defendants' motion to strike (ECF No. 183) Plaintiff's motion to strike.

1   180). The Court will also grant in full Defendants' Summary Judgment Motion (ECF No.

2   172), and will deny Plaintiff's Summary Judgment Motion (ECF No. 167).

## II.   BACKGROUND[3]

4   In 2014, Plaintiff and Defendants William and Judy Rodriguez entered into

5   negotiations for the sale of a cattle ranch ("the Property") located outside of Elko, Nevada.

6   (ECF No. 167-1 at 35 ("2014 Grant Deed").) After some negotiations, Plaintiff made a

7   third-amended offer to purchase the Property, which was accepted and signed by both

8   parties by September 7, 2014. (ECF No. 167-1 at 5-29 ("Purchase Agreement").) William

9   and Judy Rodriguez, as trustees, and the Rodriguez Trust conveyed the Property to

10  Clover Valley Ranch LLC on December 26, 2014.[4] (ECF No. 167-1 at 35.) This action

11  followed.

### A.    Third-Amended Purchase Agreement

13  Relevant information from the Purchase Agreement is summarized as follows.

#### 1.    Assignment

15  Discussions to purchase the Property involved Plaintiff, Defendants, real estate

16  agent Paul Bottari, and other third parties. But the signatories to the Purchase Agreement

17  are described as "Seller: Bill Rodriguez, Trustee" and "Buyer: Gaetan Pelletier for

18  Assignee." (*Id.* at 15.) Plaintiff intended to form an LLC that would own the Property, as

19  indicated in paragraph 24 of the Purchase Agreement: "Buyer shall be a new formed

20  Colorado LLC and for the purpose of this instrument, Gaetan Pelletier shall designate the

21  newly form [sic] LLC as the Assignee of this Contract." (*Id.* at 41.) Plaintiff subsequently

22  formed Clover Valley Ranch LLC on December 3, 2014. (ECF No. 174-9.) The 2014 Grant

23  Deed reflects that the sale is between "William V. Rodriguez and Judy A. Rodriguez,

24  Trustees of the William V. Rodriguez Family Revocable Living Trust" and "Clover Valley

25  Ranch LLC." (ECF No. 167-1 at 36.)

---

[3]The facts that follow are undisputed unless otherwise noted.

[4]The closing date set by the Purchase Agreement was December 17, 2014, but the parties ultimately signed the 2014 Grant Deed on December 26, 2014. (ECF No. 167-1 at 12, 38.)

### 2. Option

The Purchase Agreement also included an option to purchase livestock and hay. (ECF No. 167-1 at 28-29 ("Option").) The Option's terms provide that the Buyer may purchase "150 black angus mother cows at the price of Two Thousand Dollars ($2,000.00) each other market price, whichever is the lesser amount." (*Id.* at 28.) The Option further states that the Buyer would "have first choice" to make its election from "among Seller's approximate 250 mother cows." (*Id.*) The time for the Buyer to exercise the Option was "up to ninety (90) days after the purchase of the ranch." (*Id.*)

The Option further permitted the Buyer to purchase "hay from the 2014 harvest at the cost of $125.00 per ton," at a quantity "not less than an amount determined to sufficiently satisfy the need of the livestock purchased by Buyer." (*Id.* at 29.)

### 3. Water Rights

Per paragraph five of the Purchase Agreement, all of the seller's water rights were conveyed to the buyer per paragraph five of the Purchase Agreement. (ECF No. 167-1 at 9-10.) The provision included a ten-day due diligence period "from the date of acceptance" for the buyer to "fully inspect the real property, including Water rights." (*Id.* at 10.) Further, the Purchase Agreement states that "If there are no objections during the due diligence period, the property is considered accepted." (*Id.*) The Purchase Agreement was signed by Plaintiff on August 29, 2014, and Defendant William Rodriguez on September 7, 2014. (*Id.*)

### B. Middagh Spring and Domestic Water

The Rodriguez Trust acquired the Property from Mortensen Partners ("Mortensen") on May 31, 2012. (ECF No. 174-2 at 2 ("2012 Grant Deed").) Mortensen had, in turn, acquired the Property from Leroy F. Bush on November 3, 2003. (ECF No. 174-5 at 2 ("2003 Grant Deed").) Mortensen acquired all water rights held by Bush, but the Rodriguez Trust did not acquire all water rights held by Mortensen.

Instead, prior to the 2012 sale to the Rodriguez Trust, Mortensen conveyed portions of the land it acquired from Bush to James and Karen Middagh in 2010 and

2012.[5] (ECF No. 174-2 at 4.) This land lay to the west of State Route 232, adjacent to the Property as it was conveyed to the Rodriguez Trust and, subsequently, to Plaintiff. (*Id.*) Mortensen also reserved some irrigation water rights. (*Id.*)

Bottari Real Estate advertised the Property for sale in May 2010, prior to the sale to the Rodriguez Trust. (ECF No. 174-6.) When the Rodriguez Trust decided to sell, the Property was again listed by Bottari. (ECF No. 167-1 at 2-3.) The 2014 advertisement on Bottari's website stated: "Domestic water is from a spring piped down to the buildings and troughs and under gravity flow pressure." (*Id.* at 2.) Before Plaintiff purchased the Property, American AgCredit was hired to appraise it. (ECF No. 167-1 at 59-120.) The appraisal reflected the portions of the irrigation water rights which were reserved to the previous seller. (*Id.* at 66.) The appraisal did not address the domestic water serving the farmhouse. (*Id.*)

On December 30, 2014, Bottari emailed Plaintiff informing him that he would need to confer with Jim Middagh "about continuing to keep the home on his water system until a well can be drilled for the home." (ECF No. 174-11 at 2.) Plaintiff responded about fifteen minutes later with "Thanks" and did not further object. (*Id.*)

In February 2015, Bottari emailed Plaintiff and William Rodriguez to clarify that the sentence regarding the domestic water for the Property that was on his website advertisement was "a left over" from when he sold the ranch to the Rodriguez Trust. (ECF No. 167-2 at 22.) Bottari clarified that the brochure describing the Property did not include such a reference, and that he had emailed Plaintiff prior to closing to make sure he was aware he would need to drill a well. (*Id.*)

C.    **Prior Procedural History**

In September 2017, Plaintiff filed two lawsuits against Defendants and other third-parties. The first was this action, which he filed in his own name. (ECF No. 1.) The second he filed two days later in the Southern District of California, "derivatively on behalf of

---

[5]Submitted evidence suggests that the Middaghs are members of Mortensen. (ECF No. 174-6 (indicating the Middaghs are doing business as Mortensen Partners LP).)

4

Clover Valley Ranch LLC." (ECF No. 174-16.) In that action, Plaintiff alleged claims for breach of contract, negligence, fraud, slander, and false representations. (*Id.*) The Southern District dismissed his complaint, in part because he was improperly litigating *pro se* on behalf of a limited-liability corporation. (ECF No. 174-17.) Plaintiff proceeded with this action.

After three years of litigation, Plaintiff filed a motion for partial summary judgment. (ECF No. 167.) He seeks summary judgment that the 2014 Grant Deed conveyed "appurtenant domestic water to the ranch house" to Clover Valley Ranch LLC. (*Id.* at 12.) Although his brief is not exactly clear he seems to further seek summary judgment on his negligence, fraud, and conspiracy claims. (*Id.*)

Defendants also moved for summary judgment on all claims. (ECF No. 172.)

## III.    LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser*

*Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

## IV.   DISCUSSION

Defendants argue in their Summary Judgment Motion that Plaintiff may not bring breach of contract claims because Clover Valley Ranch LLC was the real party to the contract. Defendants further argue they are entitled to summary judgment on Plaintiff's various state law tort claims. The Court will address the standing issue first, then will turn to the parties' motions to strike to assess which evidence may be considered at summary judgment. The Court will then evaluate Plaintiff's tort claims.

### A.    Standing and Breach of Contract (Count I)

Defendants argue Plaintiff lacks standing to bring his breach of contract claim because he is not the real party in interest. (ECF No. 172 at 7-8.) Because Plaintiff signed the Purchase Agreement on behalf of the assignee LLC, Defendants claim he is not a proper party to the contract and may not assert claims for contract breach. Plaintiff argues he was a party to the contract and, further, that he was personally impacted by the fraudulent representations contained therein. (ECF No. 179 at 2.)

To have standing under Article III, a plaintiff must "present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendants' challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008). But while Article III standing restricts a federal court's ability to hear a case, prudential standing is concerned with practical justiciability concerns, including whether the party asserting the claim has the appropriate incentive to prosecute the case with the "necessary zeal and appropriate presentation." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004).

Typically, "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). A plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Although this rule is not absolute, courts require two additional showings from litigants seeking to enforce the rights of third parties: (1) that "the party asserting the right has a 'close' relationship with the person who possesses the right, and (2) that "there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski*, 543 U.S. at 130 (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). However, a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). But this provision "is designed to avoid forfeiture and injustice when an understandable mistake has been made," *Goodman v. United States*, 298 F.3d 1048, 1053 (9th Cir. 2002), in particular "when determination of the right party to sue is difficult or when an understandable mistake has been made," *U.S. for Use and Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074 (9th Cir. 1989).

### a.    Article III and Prudential Standing

Although the Court finds that Plaintiff has Article III standing to bring his suit, he lacks prudential standing because he is not the real party in interest and there is no

7

1  hindrance to Clover Valley Ranch LLC bringing the breach of contract suit on its own

2  behalf.

3       Under Nevada law, the plaintiff must be a party to or in privity of contract with the

4  defendant to enforce the terms of the contract. *See Williams v. Emeritus Corp.*, No. 2:11-

5  cv-01497-MMD-RJJ, 2012 WL 3562774, at *2 (D. Nev. Aug. 17, 2012). Although Plaintiff

6  was a signatory to the contract, it was expressed at the time of contracting, in writing, that

7  he was signing in a representative capacity for the future assignee LLC.[6] (ECF No. 175-

8  1 at 5.) Because the right to sue for breach of contract was assigned to Clover Valley

9  Ranch LLC, the LLC is the party to the contract, not Plaintiff.

10      Moreover, because there is no given reason that Clover Valley Ranch LLC could

11 not pursue a breach of contract claim in its own name, the Court declines to confer

12 prudential standing on Plaintiff to bring this claim on behalf of a third-party. While Plaintiff

13 likely has some form of "close" relationship with Clover Valley Ranch LLC—he is one of

14 very few members of the LLC which was formed because of the purchase of the Property,

15 he initially provided the money to finance the sale of the Property to the LLC, and he was

16 the assignor signatory to the August 2014 Purchase Agreement—he has failed to

17 demonstrate any reason why Clover Valley Ranch LLC is hindered from protecting its

18 own interests.

19      Finally, Plaintiff does not have standing as a member of the LLC to sue on behalf

20 of the LLC. Not only does Nevada law prohibit such suits, *see* NRS § 86.381, but Plaintiff

---

24      [6]The Purchase Agreement refers to the contracting parties as "William V. Rodriguez and Judy A. Rodriguez, as Trustees of the William V. Rodriguez Family

25 Revocable Living Trust . . . and Gaetan Pelletier representing Assignee 'Buyer'." (ECF No. 175-1 at 5.) The Agreement further clarifies that "Buyer shall be a new formed

26 Colorado LLC and for the purpose of this instrument, Gaetan Pelletier shall designate the newly form [sic] LLC as the Assignee of this Contract." (*Id.* at 13.) In anticipation of closing,

27 Plaintiff provided information for the Clover Valley Ranch LLC to his title insurance agent, referring to the LLC as "assignee and the party to which the ranch will be vested to." (ECF

28 No. 174-8 at 2.)

1  has already been admonished by the Southern District of California for attempting to
2  pursue these same claims *pro se* on behalf of the LLC.[7]

3  ### b.  Waiver or Undue Delay

4  Plaintiff argues that the Court should not hear Defendants' standing arguments
5  because Defendants never moved to dismiss for lack of standing. (ECF No. 179 at 2.)
6  The Court construes Plaintiff's argument against raising standing at summary judgment
7  as a waiver defense. While it is true that Defendants did not move to dismiss the breach
8  of contract claims for lack of standing until summary judgment, Defendants did raise that
9  Plaintiff may not be the real party in interest as an affirmative defense in their answer to
10 the FAC. (ECF No. 82 at 15.) Defendants therefore preserved their objection that Plaintiff
11 is not the real party in interest.

12 "The federal rules do not contain a specific procedure for raising an objection that
13 plaintiff is not the real party in interest. Nor do they indicate when the challenge should
14 be made." 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §
15 1554 (3d ed. 2021) (indicating that raising the objection as an affirmative defense and an
16 answer is likely appropriate). While the parties may have been saved substantial time and
17 expense had Defendants moved to dismiss the breach of contract claim, there is no
18 reason why moving for summary judgment is inappropriate.

19 Moreover, the equitable considerations of Rule 17(a)(3) do not apply in this
20 circumstance. Plaintiff had sufficient time to join Clover Valley Ranch LLC and his
21 decision to proceed in his own name rather than joining the LLC was not a mistake. The
22 Ninth Circuit has reasoned that Rule 17(a)(3)'s protection against dismissal is intended
23 to prevent dismissal in complex cases or situations where the plaintiff made an honest
24 mistake. *See Goodman*, 298 F.3d at 1053. Plaintiff already attempted to bring an action

25

26  ───────────
[7]*See Pelletier v. Rodriguez*, Case No. 17-cv-1809-BTM-JMA, 2018 WL 4562752,
27 at *1-2 (S.D. Cal. Sept. 24, 2018). Plaintiff there brought his claims *pro se* "derivatively on
behalf of Clover Valley Ranch LLC." *Id.* at *1. The district court dismissed his case
28 because he was not permitted to represent the LLC *pro se. Id.* Also of note, Plaintiff
alleged in that case that "Clover Valley Ranch LLC is the real Plaintiff in interest." *Id.* at
*2. The Southern District of California agreed.

derivatively on behalf of Clover Valley Ranch LLC, in which the district court reasoned that the LLC was the real party in interest and that Plaintiff could not properly represent an LLC *pro se*. *See Pelletier*, 2018 WL 4562752 at *2. Plaintiff therefore was aware that Clover Valley Ranch LLC was the real party in interest, and that it would have to be represented by counsel if it chose to pursue its breach of contract claim. He chose instead to attempt to bring the claim in his own name so that he could proceed *pro se*. After Defendants raised that he may not be the real party in interest in their answer, Plaintiff did not take any action to join the LLC or retain counsel.

Because Plaintiff is not the real party in interest and may not bring this claim on behalf of Clover Valley Ranch LLC, the Court finds that Plaintiff lacks standing to bring contract claim and will grant summary judgment on this count. Accordingly, the Court will also deny Plaintiff's partial motion for summary judgment on the breach of contract claim.

## B. Motions to Strike

Defendants move to strike four documents that Plaintiff attached to his Summary Judgment Motion and to his response to Defendants' Summary Judgment Motion. Defendants argue these documents were not produced in discovery nor identified in Plaintiff's initial disclosures. (ECF Nos. 176, 183.) Plaintiff included in his response to Defendants' Summary Judgment Motion a motion to strike, which the Court construes as a motion to strike Defendants' Summary Judgment Motion. (ECF No. 179, 180.) The Court will address each party's motions in turn.

### 1. Defendants' Motions to Strike

Defendants request the Court strike (1) a lease agreement between Clover Valley Ranch LLC and Plaintiff, and (2) Plaintiff's tax returns from 2015, 2016, and 2017. (ECF Nos. 176, 183.) Defendants first moved to strike Exhibits 6 and 7 attached to Plaintiff's Summary Judgment Motion because they were not disclosed in discovery.[8] (ECF No. 176 at 3-4.) Exhibit 6 is a lease executed between Clover Valley Ranch LLC and Plaintiff.

---

[8]Plaintiff responded (ECF No. 178) and Defendants replied (ECF No. 181).

(ECF No. 167-1 at 45-56 ("Farm Lease").) Exhibit 7 is Plaintiff's 2015 tax return (ECF No. 167-1 at 57-58.) Defendants later also moved to strike Exhibits 1-4 (ECF No. 179 at 23-37) that Plaintiff attached to his opposition to Defendants' Summary Judgment Motion.[9] (ECF No. 183.) Exhibit 1 is Plaintiff's 2015 tax return, the same as Exhibit 7 mentioned above. (ECF Nos. 179 at 23-24, 167-1 at 57-58.) Exhibit 4 is the same Farm Lease mentioned above. (ECF Nos. 179 at 29-37, 167-1 at 45-56.) Exhibits 2-3 are Plaintiff's 2016 and 2017 tax returns, respectively. (ECF No. 179 at 25-28.)

Plaintiff first argues that he was not obligated to produce the Farm Lease or his tax returns because Defendants "never requested any discovery," then argues in the alternative that both exhibits were produced at a prior settlement conference. (ECF No. 178 at 1, 3.) Defendants counter that all documents should have been disclosed as required initial disclosures per Federal Rule of Civil Procedure 26(a)(1)(A)(ii), but that Plaintiff relied on impermissibly broad categories that did not describe any of the documents. (ECF Nos. 181 at 2-3, 193 at 2-3.) The Court agrees with Defendants as to the Tax Returns, but not the Farm Lease.

A party is required to disclose, without awaiting a discovery request, "a copy—or a description by category and location—of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Instead, the "modest" requirements of Rule 26(a) require the description be sufficient to "enable opposing parties (1) to make an informed decision concerning which documents might need to be examined, at least initially, and (2) to frame their document requests in a manner likely to avoid squabbles resulting from the wording of the requests." *Song v. Drenberg*, Case No.18-cv-06283-LHK (VKD), 2019 WL 1949785, at *1 (N.D. Cal. May 2, 2019) (quoting Fed. R. Civ. P. 26, Advisory Comm. Notes (1993)). Moreover, Rule 26(a)(1)(A)(ii) does not necessarily require a party to actually produce the documents that it identifies in its initial disclosures, nor are sanctions necessarily appropriate when the opposing party never demands production. *See*

---

[9]Plaintiff responded (ECF No. 185) and Defendants replied (ECF No. 186).

*Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011); *see also BWP Media USA, Inc. v. Urbanity, LLC*, 696 F. App'x 795, 796 (9th Cir. 2017) ("The rule does not require affirmative production of documents.").

However, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed evidence." *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)). But if exclusion "will deal a fatal blow to a party's claim, a district court must consider (1) whether the claimed noncompliance involved willfulness, fault, or bad faith, and (2) the availability of lesser sanctions." *Id.* (internal quotations and citation omitted). The district court "need not hold a sua sponte hearing" on whether the nondisclosed information was harmless, nor does the court abuse its discretion in excluding evidence if the noncompliant party fails to move for lesser sanctions. *See id.* at 741. "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or harmless." *R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

As further explained below, the Court will deny Defendants' motions to strike the Farm Lease, but will grant the motions to strike Plaintiff's tax returns.

### a.     Farm Lease

Because Plaintiff satisfied the initial disclosure requirements as to the Farm Lease, the Court will not strike it from Plaintiff's attachments. Plaintiff's category "Documents describing the purpose of the usage of the ranch, and those entitled to the water rights" in his initial disclosures reasonably describes a category of documents that would include the Farm Lease. (ECF No. 175-1 at 36.) The category's description would also inform Defendants that Plaintiff intended to present evidence about who was using the ranch and who could lay claim to the water rights. *See, e.g.*, *Deutsche Bank Nat'l Tr. Co. v.*

*Seven Hills Master Comm. Ass'n*, Case No. 2:15-cv-01373-APG-NJK, 2016 WL 1639885, at *1-2 (D. Nev. Apr. 25, 2016) (reasoning that the purpose of initial disclosure is to put the opposing party "on notice" about which documents may be used at trial). Moreover, Plaintiff's initial disclosures stated the documents were "in the possession control or custody of Plaintiff"—although this is a somewhat vague description of the documents' location, it would inform Defendants that Plaintiff could produce those documents upon request. (ECF No. 175-1 at 35.)

As Defendants have repeatedly emphasized, there has been "lengthy discovery" in this case. (ECF No. 176 at 3.) But Defendants do not attach to their Summary Judgment Motion any proof that they have attempted to proactively discover any information from Plaintiff, nor do they even dispute Plaintiff's allegation that he received no discovery requests from Defendants. Moreover, the admission of the Farm Lease does not harm Defendants because its admission does not alter the Court's finding that Plaintiff lacks prudential standing to bring his breach of contract claim—Plaintiff may well have Article III standing because he was financially harmed by the alleged breach, but the existence of the Farm Lease does not change that the breach of contract claim should have been brought by the real party in interest, Clover Valley Ranch LLC. Ultimately, the Farm Lease was adequately described by a category in the initial disclosure, the Court finds that Rule 37(c)(1) does not apply and will therefore deny Defendants' motions to strike as they relate to the Farm Lease.

### b. Tax Returns

Unlike the Farm Lease, however, Plaintiff's initial disclosures did not reference any category of documents relating to his personal finances or his computation of damages. None of Plaintiff's descriptions of categories of documents refer to the losses he or the LLC suffered. Although the Court understands and agrees with Plaintiff's argument that Defendants would have been aware that he would argue he had suffered losses, the purpose of Rule 26(a)(1)(A)(ii) disclosures "is to tell the opposing party which documents may be used at trial." *Deutsche Bank Nat'l Tr. Co.*, 2016 WL 1639885 at *1. Plaintiff's

26(a)(1)(A)(ii) initial disclosures do not reference any such documents that would inform Defendants about Plaintiff's theory of damages.

Plaintiff's failure to include a computation of damages exacerbates the potential harm from omitting the Tax Returns in his description of documents. Judges in this district have emphasized that Rule 26(a)(1)(A)(iii) plays an important role in preparing for trial and settlement. *See Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 594 (D. Nev. 2011) ("Rule 26(a)(1)(A)(iii) would be rendered meaningless if a party could avoid its requirements by not obtaining the documents or information needed to prepare the damages computation."); *Montilla v. Wal-Mart Stores, Inc.*, No. 2:13-cv-02348-GMN-VCF, 2015 WL 5458781, at *2 (D. Nev. Sept. 16, 2015) (reasoning the Rule "requires parties to make a reasonable forecast of their damages so the opposing party may 'prepare for trial or make an informed decision about settlement'") (quoting Fed. R. Civ. P. 26(a), Advisory Comm Notes. 1993). The combined absence of any description of the tax returns as possible documents he would rely on and omission of a computation of damages in Plaintiff's initial disclosures support the Court's finding that these documents were not properly disclosed.

Finally, Plaintiff offers no argument that the omission was substantially justified or harmless. He instead argues that he had no obligation to disclose the Tax Returns. (ECF No. 178 at 4.) Because Plaintiff does not argue the omission was harmless but did violate the requirements of Rule 26(a), the Court need not hold hearing before determining that exclusion is an appropriate sanction. *See Merchant*, 993 F.3d at 741. Furthermore, because the exclusion of the tax returns goes to Plaintiff's calculation of damages, not to any element of his asserted claims, the Court finds that exclusion does not deal a fatal blow to any claims. *See id.* at 740. The Court accordingly will grant Defendants' motions to strike in part and will exclude Plaintiff's Tax Returns under Rule 37(c)(1).

### 2. Plaintiff's Motion to Strike

Plaintiff's response to Defendants' Summary Judgment Motion included a request to strike the motion in its entirety. (ECF No. 179, 180.) Defendants responded that the

motion to strike was frivolous and that the Court should interpret Plaintiff's filings as an opposition to Defendants' Summary Judgment Motion. (ECF No. 184.) Plaintiff makes no specific argument why Defendants' Summary Judgment Motion is improper. Accordingly, the Court agrees with Defendants that it is merely duplicative of Plaintiff's opposition to Defendants' Summary Judgment Motion and will deny Plaintiff's motion to strike. (ECF No. 180.)

### C.    Negligence (Counts II and III)

Defendants move for summary judgment on Plaintiff's claims for negligence and gross negligence. Plaintiff alleges a variety of intentional acts in his negligence claims, including attempting to void the offer, removing hay and cattle from the ranch prior to Plaintiff taking possession, and depriving Plaintiff of his legally obtained water rights. (ECF No. 23 at 17.) Defendants argue first that Plaintiff's claims are barred by the economic loss doctrine. (ECF No. 172 at 15-16.) Defendants also argue that Plaintiff cannot succeed on his claims because they did not owe a duty to Plaintiff and his negligence claims merely restate his improper breach of contract claim. (*Id.* at 16-18.) The Court agrees with Defendants and will grant their Summary Judgment Motion as to Plaintiff's negligence claims.

The economic loss doctrine provides that "purely economic losses are not recoverable in tort absent personal injury or property damage." *Terracon Consultants Western, Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 87 (Nev. 2009). The Nevada Supreme Court has clarified that claims for negligent misrepresentation are barred by the economic loss doctrine, reasoning that "the parties' disappointed economic expectations are better determined by looking to the parties' intentions expressed in their agreements." *Halcrow, Inc. v. Eighth Judicial Dist. Court*, 302 P.3d 1148, 1153 (Nev. 2013).

Plaintiff's alleged grievances all amount to economic losses associated with a purported breach of the Purchase Agreement. Nowhere does Plaintiff allege personal injury. Plaintiff does allege harm to his property, but the harm alleged is purely economic: "damages to crop, loss of cattle business opportunities, loss of profits from sale of

Alfalfa/Orchard grass, and delays of closing." (ECF No. 23 at 17.) These harms are economic in nature and are properly addressed through a breach of contract action (that is brought by the real party in interest).

But even setting aside the economic-loss doctrine, the Court further finds that there was no duty of care Defendants owed Plaintiff that could give rise to remedies in tort. To prevail on a negligence claim generally, a plaintiff must establish: "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Clark Cty. Sch. Dist. V. Payo*, 403 P.3d 1270, 1279 (Nev. 2017). Plaintiff has not identified a duty that Defendants owed him in contracting. Instead, he alleges that Defendants failed to perform the contract "with care, skill, reasonable expedience, and faithfulness." (ECF No. 23 at 16.) The Court construes these claims to be for breach of the implied covenant of good faith and fair dealing. "Although every contract contains an implied covenant of good faith and fair dealing, an action in tort for breach of the covenant arises only 'in rare exceptional cases' when there is a special relationship between the victim and tortfeasor." *Ins. Co. of the W. v. Gibson Tile Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006).

There is no evidence of a "special relationship" here. *Cf. id.* (explaining that a special relationship involves "elements of public interest, adhesion, and fiduciary responsibility . . . that is not adequately met by ordinary contract damages") (internal quotations and citations omitted). Instead, both parties here were engaged in a commercial real estate transaction, which is not the type of relationship for which the law provides special protection. Even if Plaintiff had demonstrated there was a factual dispute about whether Defendants' breached the implied covenant of good faith and fair dealing, the proper remedies would be in contract, and would need to be brought by the real party in interest, Clover Valley Ranch LLC.

Because Plaintiff has not demonstrated any duty Defendants owed him, there is no special duty arising from their relationship, and because tort damages are barred by the economic loss doctrine under Nevada law, the Court will grant Defendants' summary judgment motion as to the negligence claims.

16

**D.     Fraud (Count IV)**

Plaintiff makes two general claims of fraud. First, Plaintiff argues that Defendants' misrepresentations about the included water rights fraudulently induced him into purchasing the Property. (ECF No. 23 at 18-19.) Second, Plaintiff alleges that Defendants removed choice mother cows and hay from the Property before Plaintiff could exercise the option to purchase them. (*Id.*) Regarding the water rights, Defendants counter first that Plaintiff is barred from raising a fraudulent inducement claim because the contract included a non-reliance clause, and argue in the alternative that Plaintiff is precluded from bringing a fraud claim because he had the opportunity to inspect the Property and either declined to sufficiently do so or did not discover anything objectionable in his independent investigation. With respect to the option to purchase cattle and hay, Defendants argue that Plaintiff cannot prove Defendants did not intend to follow through with the option agreement. The Court agrees with Defendants on both fronts.

A plaintiff claiming fraudulent inducement must establish: (1) the defendant made a false representation; (2) the defendant knew or believed the representation was false, or had an insufficient basis for making the representation; (3) the defendant made the representation intending to induce plaintiff to consent to the formation of a contract; (4) the plaintiff justifiably relied on the misrepresentation; and (5) the plaintiff suffered damage resulting from his reliance on the misrepresentation. *See J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004). Absent evidence that the defendant had "no intention to perform at the time the promise was made," a failure to perform or fulfill a promise will not give rise to fraud. *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992).

**1.     Water Rights**

Defendants argue that the parties' disagreement about whether Defendants misrepresented the water rights is immaterial because (a) the non-reliance clause precludes Plaintiff's alleged justifiable reliance and (b) Plaintiff failed to object during the agreed-upon due diligence period, therefore accepting the Property. (ECF No. 172 at 21-

22.) Plaintiff does not address the non-reliance clause in his response nor otherwise refute its applicability, but instead states that he relied on Defendants' misrepresentations. (ECF No. 179 at 20-21.) Plaintiff likewise does not respond to Defendants' argument that the due diligence period elapsed without objection. As further explained below, the Court finds the non-reliance clause precludes Plaintiff from arguing that his reliance on any alleged misrepresentations was justified.

The two relevant provisions from the Purchase Agreement are as follows. The non-reliance clause states: "Buyer acknowledges that he has not relied upon any representations by the broker with respect to the condition of the property and Buyer is using his own judgment or other professional's advise [sic] in the determination to purchase the property." (ECF No. 175-1 at 11.) Next, contained in the "Water rights" section, the due-diligence clause reads: "Buyer shall have a Ten (10) business days due diligence period from date of acceptance to fully inspect the real property, including Water rights and shall have the right to have inspector inspect and [sic] Buyer's expense any portions of the property . . . If there are no objections during the due diligence period, the property is considered accepted." (*Id.* at 9.)

Non-reliance clauses may bar fraudulent inducement claims between sophisticated parties.[10] "Fraudulent-inducement claims *do* fail as a matter of law when the alleged fraud directly contradicts the terms of an express written contract." *Magpiong v. Superdry Retail LLC*, 304 F. Supp. 3d 983, 987 (D. Nev. 2018) (emphasis in original). The provision in the Purchase Agreement is a clear an unambiguous non-reliance clause. The language expressly states that Plaintiff is relying on independent conclusions, whether his or other professionals', in deciding whether to purchase the Property. Plaintiff therefore assumed the responsibility of determining the nature of the water rights he was

---

[10]The Nevada Supreme Court has not definitively ruled on whether a non-reliance clause bar claims for intentional misrepresentation as a matter of law. *See Reynolds v. Tufenkjian*, 473 P.3d 777 (Nev. 2020) (differentiating between integration clauses and non-reliance clauses in an unpublished opinion but deciding the appeal on other grounds). However, other judges in this District have found that a clear and unambiguous non-reliance clause may bar a party from later claiming justifiable reliance. The Court agrees.

purchasing and what rights may be excluded. He may not now claim that he justifiably relied upon the representations of Defendants after expressly disclaiming that he would do so.

That Plaintiff also failed to object during the due-diligence period further cuts against him. Despite agreeing to a 10-day due diligence period during which Plaintiff could inspect the Property, Plaintiff made no objection to the sale. (ECF No. 175-1 at 9.) Further, Plaintiff was informed before closing that he would need to discuss "continuing to keep the home on [Middagh's] water system until a well can be drilled for the home," but Plaintiff responded only "Thanks," making no objection or further inquiry about why he would need to discuss extending the use of the neighboring spring. (ECF No. 174-11.)

Even assuming the non-reliance clause did not apply, and that Plaintiff exercised all requisite due diligence, Plaintiff still fails to show any evidence that any of the Rodriguez Defendants made any affirmative misrepresentations about the domestic water on the Property. Plaintiff's proffered misrepresentations are limited to advertisements on Bottari's website. (ECF No. 167-1 at 2.) Bottari is no longer a party to this suit, and even if he were, Plaintiff lacks any evidence that those statements were made to induce him to purchase the Property even though Bottari knew them to be false. Plaintiff's argument that language in the 2014 Grant Deed as evidence that the Rodriguez evinces the Rodriguez Defendants' intent to deceive is likewise unconvincing. The language about domestic water and appurtenant water rights is identical to the language in 2012 Grant Deed, which was still then subject to Middagh's consent to use the spring water. (ECF Nos. 167-1 at 36-37; 174-2 at 2.) Plaintiff offers no evidence that any Defendant intended to induce him to purchase the Property, knowing that the representations they made were false. To the extent that he seeks interpretation of the 2014 Grant Deed's terms and wishes to bring a breach of contract action, the real party in interest must do so.

Because the Purchase Agreement clearly states that the Buyer bore the responsibility of making its own determinations about the water rights, but Plaintiff failed

to adequately investigate even after being put on notice that the water serving the house would not be conveyed with the Property, the Court finds he could not have justifiably relied on Defendants alleged misrepresentations when he entered into the Purchase Agreement on behalf of the LLC. Accordingly, Plaintiff's fraud claim fails as a matter of law.

## 2. Option Agreement

Plaintiff also claims Defendants acted fraudulently because they never intended to permit him to purchase the cattle or hay as offered in the Option Agreement. (ECF No. 23 at 18-19.) Defendants argue that Plaintiff failed to exercise the option and that his failure to do so does not make the option fraudulent. (ECF No. 172 at 14-15, 19-20.) Further, Defendants assert that Plaintiff lacks any evidence that they never intended to perform had he properly exercised the option and that therefore he cannot succeed on his claim. The Court agrees.

As explained above, Plaintiff lacks standing to bring a breach of contract claim. Accordingly, the question before the Court is not whether Defendants breached the contract, but whether Plaintiff can provide evidence that they never intended to perform under the Option Agreement and therefore committed fraud. For a party's non-performance of a contract's term to rise to the level of fraud, the plaintiff must demonstrate some evidence of intentional wrongdoing. *See Bulbman*, 825 P.2d at 592. "The mere failure to fulfill a promise or perform in the future . . . will not give rise to a fraud claim absent evidence that the promisor had no intention to perform at the time the promise was made." *Id*. Plaintiff lacks such evidence.

The Option Agreement gave the buyer the opportunity to purchase 150 mother cows from among the seller's approximate 250 mother cows. (ECF No. 175-1 at 27.) The Option Agreement further provides: "Buyer shall have up to ninety (90) days after the purchase of the ranch to exercise its option to purchase the cows and pay the initial installment of One Hundred Fifty Thousand Dollars." (ECF No. 175-1 at 27.) At some time in January 2015, after the purchase of the Property, the parties met for Plaintiff to inspect

the mother cows and determine whether he would exercise his option. (ECF No. 179 at 18.)

No material fact to Plaintiff's fraud claim is here in dispute. The parties disagree about whether all the cows were mother cows, whether there were sufficient cows from which Plaintiff could make his selection, and whether Defendants removed some of the cows prior to Plaintiff's inspection. But Plaintiff provides no evidence, direct or circumstantial, that would support the conclusion that Defendants never intended to provide the mother cows for his purchase as promised. The Court finds that even viewed in the light most favorable to Plaintiff, no rational trier of act could reasonably find that Defendants did not intend to provide the mother cows for purchase. Plaintiff simply could not succeed on his fraud claim against Defendants as a matter of law. Accordingly, the Court will grant Defendants' Summary Judgment Motion.

### E. Civil Conspiracy (Count VII)

The Court will grant Defendants' Summary Judgment Motion on the civil conspiracy claim because Plaintiff has failed to allege any facts that the parties intended to harm him. "Actionable civil conspiracy arises where two or more persons undertake some concerted action with the intent 'to accomplish an unlawful objective for the purpose of harming another,' and damage results." *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014) (citation omitted). "Summary judgment is appropriate if there is no evidence of an agreement or intent to harm the plaintiff." *Id.* As discussed above, Plaintiff provides no evidence of intent to defraud him, nor that any alleged misrepresentations were made knowingly. Moreover, he lacks evidence that Defendants conspired together or that any agreement was formed. Accordingly, summary judgment is appropriate on this claim.

### V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 172) is granted.

It is further ordered that Plaintiff's motion for partial summary judgment (ECF No. 167) is denied.

It is further ordered that Defendants' first motion to strike (ECF No. 176) is granted in part, and denied in part, as stated herein.

It is further ordered that Plaintiff's motion to strike (ECF No. 180) is denied.

It is further ordered that Defendants' second motion to strike (ECF No. 183) is granted in part, and denied in part, as stated herein.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 15th Day of July 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE